## CIRCUIT COURT OF LOUDOUN COUNTY

Robert C. McCaulley

v.

Barick Press, Ltd.,
Richard O. Baker, Jr.,
and Barrie R. Weber

December 30, 1992

Case No. (Law) 12441

By Judge James H. Chamblin

In this case Robert C. McCaulley filed suit against Barick Press, Ltd., Richard O. Baker, Jr., and Barrie R. Weber under Virginia's Blue Sky Law (Virginia Code Section 13.1–501 *et seq.*). The defendants filed a counterclaim in which Barick seeks recovery from McCaulley under certain stock subscriptions, and Barick and the individual defendants seek recovery from McCaulley for fraud and "negligent" representations. The Court heard evidence without a jury on November 10, 12 and 16, 1992, and final argument on November 25, 1992.

For the reasons hereinafter set forth, the Court finds as follows:

(1) That none of the defendants violated the Blue Sky Law;

(2) That McCaulley is liable to Barick under his stock subscription agreement;

(3) That McCaulley is not liable to Barick, Baker or Weber for either fraud or "negligent" representations.

A considerable amount of evidence was presented in this case. It would be impossible to recite herein all the evidence presented. All concerned can be assured that even though I might not mention a particular matter of evidence in this opinion letter, it does not mean that I have not considered it. I have carefully considered all the evidence presented as well as the argument of counsel.

*Blue Sky Law Claim*

McCaulley argues that Barick is liable under Virginia Code Section 13.1–522(A) and the individual defendants are liable under Virginia Code Section 13.1–522(C) because they are officers and directors of Barick and controlled Barick. There is no doubt that Baker and Weber were officers, directors and stockholders of Barick and that they controlled Barick at all times relevant and material to this litigation. But he has to show more. He has to prove that Section 13.1–522(A) was violated.

Section 13.1–522(A) is a relatively long statutory section that sets forth various activities which can result in liability under the Blue Sky Law, but McCaulley's argument is that there were certain untrue statements of or omissions to state material facts at the time McCaulley acquired 52 shares of Barick for $208,000.00 in payments made from early March 1990 to mid July 1990. The material facts involve (1) a misstatement of the stockholders' equity in the "Baker and Weber Printing, Inc., Financial Statements and Accountants' Compilation Report December 31, 1988" ("1988 Report") (Plaintiff's Exhibit 1) and the "Barick Press, Ltd., Ashburn, Virginia, Financial Report December 31, 1989" ("1989 Report") (Plaintiff's Exhibit 3) and (2) an omission of references in the Reports to consulting and non-competition agreements with Virgil Funk and Paul L. Klotz (Plaintiff's Exhibits 5, 7, 8, 9, 10, 11 and 12).

The Defendants assert that an examination of each Report, without more, will not reveal any untrue statements or omissions of material fact, and that under all the circumstances McCaulley nevertheless knew all the material facts.

A major part of the evidence presented at trial concerned the transaction whereby Baker and Weber acquired on May 31, 1988, certain assets of Reliable Printing and Copy Centers, Inc., and how that transaction should have been reported in the 1988 and 1989 Reports. Each side presented its own expert accountant. John Langer, the Plaintiff's expert CPA, and Stanley Simon, the Defendant's expert CPA, both were credible. It is easier for Langer to criticize how the transaction was reported that it is for Simon to justify it. I have a very difficult time reconciling the Sales Agreement and its addenda, (Plaintiff's Exhibits 5, 7, 8, 9, 10, 11 and 12), the settlement statement (Plaintiff's Exhibit 6) and the "Lotus Spread Sheet" (Defendant's Exhibit 67) prepared by Simon. I could spend many pages pointing out the difficulties and inconsistencies in how the parties

treated the transaction and how the accountants chose to report them, but I do not need to in order to decide this case because I am of the opinion that McCaulley was fully aware of the material facts surrounding the May 1988 transaction and its subsequent modifications at the time he first subscribed to stock of Barick.

McCaulley might not have a college degree or a great amount of investment experience, but he is intelligent. He took college courses in the area of corporate investment, and he read a considerable amount on corporate investment on his own. He inherited a series of investments from his grandmother before he invested in Barick. Simply put, McCaulley was not ignorant of business practice, he could read a balance sheet and knew the things to look for before investing in a business.

This is not a case of stock being sold to a stranger to the business of Barick. McCaulley had worked for Barick since August 1989. As an employee McCaulley had to obtain some knowledge of the nature, scope and volume of Barick's business. In addition, McCaulley loaned $10,000.00 to Barick in November 1989 so it could pay its personal property taxes. At that time McCaulley was fully advised by Weber, primarily at his apartment on the Sunday afternoon before the Monday on which McCaulley made the loan, of the Reliable transaction, the capitalization of Barick, its financial structure and the Klotz and Funk Agreements. McCaulley was given the 1988 Report and the October 31, 1989, "In House" financial statement. McCaulley was made aware before he invested in Barick that Funk and Klotz had consulting agreements with Barick which spread out the monies owed to them under the addenda to the Sales Agreement. He acknowledged to Weber that he was familiar with the concept used in the consulting agreements.

After the loan in November 1989 and before he first subscribed to stock in March 1990, McCaulley talked with Weber and Baker about Barick. In April 1990 he came to the front office as an officer to help in estimating. He was shown monthly "In House" statements, and Weber discussed with him where the money he invested in Barick was going.

McCaulley's plan was that the money he put in Barick would be a decent investment in the long run for use in the future education of his children.

The evil to which the Blue Sky Law is addressed is fraudulent and sharp practices in the investment securities market. The Blue Sky

Law is not designed to protect persons purchasing an interest in the business. McCaulley did not purchase stock in Barick because the stock was a good investment. He could not have felt that it would produce a dividend in the near future. Barick could not have paid dividends on its stock in 1988, 1989 or 1990. McCaulley could not have expected that within a reasonable time he could have sold his stock at a decent profit. Barick was a closely held corporation. There was not a definitive or a public market for its stock. What McCaulley invested in was the business of Barick. He expected to make money from Barick's business income, or maybe a sale of his interest in the business in the future at a profit. It made no difference to McCaulley that he had to buy stock in a corporation to invest in Barick. He would have invested even if Barick had been a partnership, for example.

McCaulley has not sustained the burden of proving that he did not know or in the exercise of reasonable care could not have known about the Reliable transaction and how it related to the stockholders' equity and the Funk and Klotz Agreements. Moreover, I am of the opinion that Virginia's Blue Sky Law was not meant to protect an individual who invests in or purchases a part interest in a business as opposed to merely purchasing stock in a corporation for investment purposes. Hence, I cannot find that Barick, Weber or Baker violated the Virginia Blue Sky Law, and judgment is awarded in their favor on the Blue Sky Law claim.

### Stock Subscription Claim

The evidence clearly shows that McCaulley subscribed to 69 shares of stock in Barick for a total of $276,000.00 between March 9, 1990, and June 29, 1990. He has paid $208,000.00 for 52 shares. Therefore, he owes $68,000.00 for 17 shares remaining under the subscription on June 29, 1990, for 25 shares. Barick is entitled to judgment against McCaulley for $68,000.00 for breach of the subscription agreement with interest thereon at the legal rate from July 13, 1990, the date of McCaulley's last stock subscription payment.

Barick is entitled to recover its costs associated with this judgment, but it is not entitled to attorneys' fees. Virginia follows the American Rule, and I can find no specific contractual or statutory provision that would permit Barick to recover attorneys' fees.

### Defendants' Fraud Claims

The Defendants argue that between May 1990 and July 1990 McCaulley made certain representations to financial institutions (pre-

sent or potential lenders of Barick), and that as a result of these representations Barick continued in business and the individual Defendants made additional capital contributions and incurred additional financial obligations to keep Barick in business. In short, they allege that McCaulley defrauded them into continuing Barick in business and putting additional money into it.

The elements of actual fraud are (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. The burden is upon the Defendants to prove the fraud by clear and convincing evidence. *Spence v. Griffin*, 236 Va. 21, 28 (1988).

I cannot find by clear and convincing evidence that McCaulley made representations which were false when made and that the Defendants relied on the alleged false representations. There was conflicting evidence on the alleged false representations. The only real evidence that the representations were false when made was the failure of McCaulley to fulfill his stock subscription obligations and his eventually leaving his employment with Barick. But at the time the representations were made, considering McCaulley's investment in Barick, it would have been in his best interest for Barick to succeed. Baker and Weber had invested in Barick well before McCaulley. Barick was their only business. They were experienced businessmen. It is difficult for me to believe that their continuing the business of Barick was solely in reliance on what McCaulley said he would do in the future. The reasonableness of their reliance is questionable. I do not have a firm conviction that McCaulley defrauded the Defendants.

Judgment is granted in favor of McCaulley on the fraud counts of the counterclaim.

### Defendants' "Negligent" Representation Claim

Judgment is awarded in favor of McCaulley on the "negligent" representation counts because I do not feel that the evidence supports a finding that he negligently represented anything to the Defendants. Further, I doubt that there is a cause of action of "negligent representation."